HENRY HARRIS, Adm'r. v. ROBERT H. HARRIS, Adm'r.

REAL PROPERTY. *Administrator. Redemption of land by. Rights of creditors.* Where the son is a judgmennt creditor of, and administrator upon his father's estate, he may redeem land belonging to the estate, which has been sold for the payment of debts, and hold the same as any other redeeming creditor, and his fiduciary relation as administrator will not alter the case.

Case cited: Dulles *et al. v.* Read *et al.*, 6 Yer., 53, 65, 68.

The court say: " As a judgment creditor of said Giles T. said Robert G. had the undoubted right to redeem, or to purchase the claims of creditors who had liens.   That right was exercised upon the last day upon which he could claim it, no one else who had such right having at any time theretofore offered to redeem, and we cannot see that he, as administrator, sustained any such fiduciary relation to the land as that he should forego the exercise of an undoubted legal right.   Nor that because he was heir at law, as well as judgment creditor, he

might not for himself and the widow and heirs of his father, purchase the rights and claims of creditors having liens upon the land; or as such judgment creditor redeem from them, holding the land as any other redeeming creditor would hold it."

FROM MAURY.

Appeal from the Circuit Court.

C. O. NICHOLSON for plaintiff.

G. P. FRIERSON for defendant.

DEADERICK, J., delivered the opinion of the court.

On the 18th of January, 1870, the complainant filed his bill in the Chancery Court of Maury county which was dismissed at August special term, 1872, and brought by appeal to this court.

At the January term, 1861, of the Circuit Court of Maury county, judgments were rendered against Giles T. Harris in favor of Kerr, Matthews, Lancaster, Mooney, W. Galloway and Porter, amounting in the aggregate to $5,666.49.

On the 11th of December, 1865, the land of said Giles T., containing about seven hundred and eighty acres, was sold for the satisfaction of said judgments, and bid in by the several plaintiffs in said judgment at $6,340.49, being the amount of the judgments, interest, etc.

At the August term, 1861, of said court, John Frierson and J. B. Frierson, administrators of Embry W. Yarboro and W. Galloway, each recovered a judgment against the said Giles T.—said judgments aggre-

gating $4,298.40.   From these several judgments said Giles T. appealed to this court, and the causes were not determined until February, 1866, when each of said judgments was affirmed and executions from this court issed thereon.

Before the rendition of these Supreme Court judgments, and in anticipation thereof, said Giles T. on 6th of January, 1866, entered into a written agreement with the purchasers of his land, to the effect that the said Supreme Court judgments, constituting a prior lien upon his lands, must be paid as well as the circuit court judgments before said land could be redeemed.   In May, 1866, Giles T. died, and at January term, 1867, of the county court, defendant, Robert G., his son, administered upon his estate.   In his lifetime the said Giles T. had conveyed, by deed of trust, to secure his creditors, all his personal estate, which was sold after his death by the trustee in said deed, and no assets came to the hands of his administrator.

The Supreme Court judgment creditors seem to have acquiesced in the arrangement made between Giles T. and the purchasers of his land, as they took no steps to enforce their judgments.

So the matters stood until the 11th of December, 1867, the last day upon which the lands sold December 11, 1865, were redeemable.   Upon that day, with the assent of all the creditors who had purchased the lands, and by an agreement with them and the Supreme Court judgment creditors, the said Robert G. secured the interest of said several creditors in the

said land, paying part only of the said several judg-
ments, and executing his notes for the balances due,
taking a transfer of their claims, and giving a deed
of trust on the land to secure said notes, and to
secure about $2,000 which he had borrowed of Aiken
to aid him in making his cash payments.

The bill is filed to subject the land to sale, to
pay first the claims secured in the deed of trust, to
re-imburse whatever the said Robert G. may have ad-
vanced out of his own means in the redemption of the
land, and to apply the residue to the payment of
complainant's judgment obtained January, 1866, for
about $6,000, against said Giles T. It is alleged
that Robert G., being administrator of his father's es-
tate, could not redeem the land for his own benefit,
and that of the widow and heirs at law of said Giles
T. to the exclusion of creditors, and that in point of
fact, the redemption was made and intended for the
benefit of the creditors of the estate of his father, of
which he was the administrator. On the other hand
defendant, Robert G., insists that he had no assets of
the estate of his father; none had come or could
have come to his hands; that as one of the heirs at
law of his father, and being a judgment creditor, he
had the right to redeem for the benefit of the widow
and heirs at law, and that he did so redeem, and not
for the benefit of creditors other than those for whose
benefit he made the trust deed.

It is insisted that as administrator said Robert G.
was a trustee, and could not redeem for himself and
he other heirs at law, but upon his effecting such

redemption, it would enure to the benefit of the cred-
itors of the estate, and he would hold the land so
redeemed as a trustee for their benefit.

It is true that if a person occupying a fiduciary
relation purchases the trust property with his own
funds, he cannot retain it for his own benefit, but must
hold it in trust for the beneficiary. 1 Perry on T.,
sec. 129. An administrator is a trustee, as has been
held frequently by this court, holding the property
which comes to his hands in trust for the payment
of intestate's debts and distribution amongst his dis-
tributees.

But the only property that can come to his hands is
personal property. He has no power to sell or other-
wise dispose of the realty that descends, upon the an-
cestor's death intestate, immediately and directly to
his heirs at law, and not only the land itself so de-
scends when the legal title is in the ancestor, but if
it has been previously sold in the ancestor's lifetime
for his debts, the right of redemption also descends to
the heir. It is true that the administrator might,
upon the exhaustion of the personal assets, file a bill
against the heirs to sell land to pay debts, but he is
not bound to do so. The law authorizes but does
not compel him to do so. If he fails or refuses to
file a bill for this purpose he violates no trust, for
in respect to the realty, or the filing of a bill for
its sale to pay debts, he is clothed with no trust in
virtue of his office as administrator. His duty under
the law is to administer the personal estate. Any
bona fide creditor, whose debt remains unpaid, may

file his bill for the attainment of the identical objects which could be attained if the bill was filed by the administrator.     6 Yer., 53, 65, 68.

But whether the bill is filed by the administrator or the creditor, it is filed under the permission of the law, and not under compulsion, and all the creditors should be brought in, or allowed to come in, to share rateably in the proceeds of the sale of the land. Complainant, who is the only creditor unprovided for by the trust deed made by defendant, Robert G., as far as the record discloses, never offered or attempted to redeem the land, nor was he prevented from so doing by any act or declaration of defendant, the heirs at law of Giles T., deceased, or other person.

Nor do we think that the evidence shows that Robert G. intended that his redemption should enure to the benefit of other creditors than those who were secured or paid in the arrangement.    His negotiations and conversations were only with this class of creditors, and it is not alleged in the bill that complainant was prevented from redeeming by any act or declaration of defendant, Robert G.

As a judgment creditor of said Giles T. said Robert G. had the undoubted right to redeem, or to purchase the claims of creditors who had liens.    That right was exercised upon the last day upon which he could claim it, no one else who had such right having at any time theretofore offered to redeem, and we cannot see that he, as administrator, sustained any such fiduciary relation to the land as that he should forego the exercise of an unndoubted legal right.    Nor that

because he was heir at law as well as judgment creditor, he might not for himself and the widow and heirs of his father, purchase the rights and claims of creditors having liens upon the land; or as such judgment creditor redeem from them, holding the land as any other redeeming creditor would hold it.

The result is, we are of opinion, that the chancellor's decree was correct, and affirm it with costs.